IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(JACKSONVILLE DIVISION)

EMILY CARGILL

&

ALISON FRANCISCUS

Plaintiffs,

v.

Case No. 3:26-cv-1986-JEP-PDB

MICHAEL BRICKER
CHIEF OF THE CITY OF JACKSONVILLE's
DIVISION OF ANIMAL CARE AND PROTECTIVE SERVICES
in his official capacity, & THE CITY OF JACKSONVILLE, FLORIDA

Defendants.

_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff, ALISON FRANCISCUS (Franciscus") by and through her undersigned counsel, oppose and respond to the Defendants' MICHAEL BRICKER ("Bricker') and CITY OF JACKSONVILLE ("Jacksonville") Opposed Partial Motion to Dismiss [ECF No. 10] (hereafter "MTD") as follows:

***Introduction***

The MTD conflates two different jurisdictional questions: whether the court in Franciscus's earlier lawsuit retained authority to enforce that case's settlement, and whether this Court has supplemental jurisdiction over related state-law claims in a new action presenting live federal

constitutional claims. Franciscus invokes the latter basis under 28 U.S.C. § 1367. The absence of retained jurisdiction in the earlier case does not eliminate jurisdiction in this one.

The Complaint alleges continuing exclusion of Franciscus from official ACPS communications and public discussion, together with breaches of an agreement governing ACPS speech restrictions and dissemination of animal-welfare information, and obstacles to obtaining records of the promised communications. Read with the attached agreement, these allegations supply a factual connection beyond the identity of the parties or a mere generalized concern for animal welfare. The Court should deny the motion.

## MEMORANDUM OF LAW

### I. THE FACIAL CHALLENGE MUST BE RESOLVED ON THE ALLEGATIONS AND ATTACHED AGREEMENT.

Defendants characterize their motion as a facial attack. Doc. 10 at 2–3. Accordingly, the Court accepts the complaint's factual allegations as true rather than weighing competing evidence. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). ("On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion -- the court must consider the allegations of the complaint to be true.") (citations omitted) The issue is whether the pleaded facts establish supplemental jurisdiction, not whether Franciscus has already proved the contractual breach or records violations.

The current federal claims challenge Bricker's alleged policy and practice of blocking critics including Franciscus from official ACPS discussions. The Complaint alleges that Bricker has managerial and final policymaking authority over ACPS social-media content; uses his account for official business; and has blocked Franciscus and Cargill from seeing or commenting on those communications. Doc. 1 ¶¶ 14, 62, 69, 73–83, 133–136. These are current allegations of

unconstitutional restrictions on speech, access to official communications, and petitioning—not merely an effort to revive the settled retaliation claim.

The agreement attached to the Complaint addresses the same agency's speech rules and communication practices. Paragraph 4 required changes to the volunteer handbook, monthly website disclosures concerning euthanasia, website information enabling rescue organizations to receive urgent-placement emails, and weekly emails about at-risk animals. It also expressly requires ACPS to advertise dogs recommended for euthanasia solely for space on all social-media platforms where ACPS has a presence, including Facebook, at least 48 hours beforehand. Doc. 1-1 ¶ 4. This express social-media obligation is material to the jurisdictional analysis but is omitted from the motion's summary of the contractual obligations. See Doc. 10 at 3–4.

The Complaint further alleges that Bricker participated in the settlement conference; the promised communication changes remain unimplemented; and Franciscus and her counsel requested the emails allegedly required by the agreement. Doc. 1 ¶¶ 86–87, 96–106, 107–120, 139–142. Count IV challenges the City's handling of those requests, including the searches and charges that allegedly obstructed access to the very communications whose existence is disputed under Count III. Id. ¶¶ 150–164.

## II. THE CLAIMS SATISFY THE COMMON-NUCLEUS STANDARD.

Section 1367(a) extends jurisdiction to state claims sufficiently related to a claim within original jurisdiction to form the same Article III case or controversy. The Eleventh Circuit applies the common-nucleus-of-operative-fact standard and ordinarily determines that relationship from the pleadings. *Lucero v. Trosch,* 121 F.3d 591, 597–98 (11th Cir. 1997). Different causes of action need not have identical elements: shared facts, occurrences, witnesses,

and evidence can establish the necessary commonality. *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1566 (11th Cir. 1994). ("While all the elements of the federal and state claims are certainly not identical, and in some cases are quite different, each claim involves the same facts, occurrences, witnesses, and evidence. This commonality is sufficient to satisfy the constitutional minimum required by section 1367(a).")

### A. THE PLEADED CONNECTION CONCERNS ACPS'S ACTUAL COMMUNICATION PRACTICES, NOT MERELY COMMON PARTIES.

Defendants describe the constitutional claims solely as discrete blocking decisions and emphasize the agreement's rescue-email obligations. That characterization separates the claims more sharply than the pleading and exhibit warrant. Plaintiffs allege exclusion from Bricker's official ACPS communications and discussion of animal treatment. Franciscus also seeks performance of contractual changes governing speech restrictions and dissemination of information concerning animal treatment and euthanasia, including communication through Facebook. The agreement is not an unrelated commercial transaction appended to a civil-rights case. Its operative provisions concern ACPS communications and the means through which the public and advocates obtain and discuss them.

There is corresponding evidentiary overlap. The nature and operation of ACPS's communication channels, Bricker's role in managing those channels, and the agency's policies concerning dissemination of animal-welfare information bear on the official character and operation of the challenged forums. Evidence concerning the implementation of the promised communication policies also bears on the contractual claim. Franciscus's history of criticism and the settlement's speech-policy changes provide context for the allegation that her continued exclusion reflects viewpoint discrimination rather than a neutral moderation decision. Doc. 1 ¶¶

14, 62, 65–87, 106. Count III expressly incorporates the viewpoint-discrimination allegations in paragraphs 80–83. Id. ¶ 137.

Franciscus does not contend that every alleged breach is independently unconstitutional or that the agreement itself creates a federal cause of action. Nor does she ask the Court to assume that the public-records requests caused the blocking. The Complaint does not allege that causal sequence. The narrower and more salient point is that the pleaded communication practices and their implementation have factual relevance across the federal and contractual claims. Section 1367 does not require the proof of every element of one claim to establish every element of another.

*Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 455–56 (11th Cir. 1996), illustrates the distinction. There, the Eleventh Circuit affirmed the district court's decision declining supplemental jurisdiction over a state law contract claim that was completely unrelated to the ERISA claim at issue. The federal retirement-benefits claims and state flight-privilege claim involved unrelated facts and were administered by separate departments; thus their common effect on retirees did not establish the required nexus. Franciscus relies on more than the presence of the same plaintiff and defendant. Here the relevant agreement expressly concerns the same agency's official communications and the Complaint identifies Bricker as responsible for social-media policy and as a participant in negotiating the policy changes. The Court should evaluate that concrete overlap rather than treating all communication-related allegations as categorically distinct.

## B. COUNT IV CONCERNS THE RECORDS OF THE DISPUTED COMMUNICATION PRACTICES.

The records sought were not unrelated municipal files. They were the communications that ACPS was required to disseminate under the settlement's policy changes. The requests identified ACPS personnel, including Bricker, and sought the rescue emails that the City represented were being sent. Doc. 1 ¶¶ 100–120, 150–151. Whether those emails exist, who sent them, and how the City searched for them are central to understanding the implementation of the challenged communication practices and to determining whether the City performed its contractual duties. Count IV thus shares specific records, agency personnel, and disputed communications with Count III. Considered with the relationship between those communication duties and the federal claims, the records count belongs to the same factual controversy. Franciscus recognizes that relatedness between two state claims alone cannot supply an otherwise missing federal anchor. The anchor here remains the pending constitutional challenge to exclusion from official ACPS communications. The requested records are part of the pleaded dispute over access to and dissemination of information through that agency's communication systems, not a separate records controversy involving a different municipal function.

The statutory charge and search issues will require some distinct evidence. So will the contractual and constitutional elements. But the existence of claim-specific proof does not answer whether the claims share a common nucleus. *Palmer*, 22 F.3d at 1566. The motion should not be granted simply because Franciscus has pleaded distinct legal duties arising from the related communications controversy.

## III. *KOKKONEN* DOES NOT FORECLOSE JURISDICTION IN THIS NEW ACTION.

Franciscus does not assert jurisdiction on the proposition that the earlier federal court automatically retained supervisory authority over the settlement. For purposes of this motion, even accepting Defendants' description that the earlier dismissal orders neither incorporated the

agreement nor retained enforcement jurisdiction, the dispositive question remains whether jurisdiction exists in this new action under § 1367.

*Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994)*, rejected reliance on inherent enforcement authority after dismissal where the settlement had not been made part of the dismissal order. However, it did not impose a categorical state-court-only rule for every later action involving a settlement of federal litigation. Its analysis expressly preserves enforcement where an independent basis for federal jurisdiction exists. Franciscus identifies such a statutory basis here: original jurisdiction over the pending constitutional claims, together with supplemental jurisdiction over sufficiently related state claims. The factual relatedness required by § 1367 must be established, but the absence of retained jurisdiction in a different, closed action does not substitute for that analysis.

Defendants' own Eleventh Circuit authority recognizes the distinction. *Law Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1317 (11th Cir. 2020) rejected a *Kokkonen* objection where independent bankruptcy-law grounds supported jurisdiction. ("[A] party's failure to comply with the terms of a settlement agreement will generally present a state breach of contract action, '*unless there is some independent basis for federal jurisdiction*.'") (emphasis in the original), citing *Kokkonen*, 511 U.S. at 382. Failure to retain settlement-enforcement jurisdiction is not an absolute bar when as here another jurisdictional ground exists. Defendants' citations to cases concerning loss of authority in a dismissed case do not resolve whether § 1367 applies in this pending case.

The agreement's Florida choice-of-law provision likewise does not defeat supplemental jurisdiction. State substantive law necessarily governs state claims adjudicated under § 1367. Moreover, paragraph 12 expressly contemplates enforcement in either state or federal courts in

Jacksonville. Doc. 1-1 ¶ 12. Franciscus does not suggest that this venue clause creates subject-matter jurisdiction by consent. It simply defeats any suggestion that the agreement requires an exclusively state forum. The statutory jurisdictional basis remains § 1367, not contractual consent.

## IV. THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION IN THIS CASE

Defendants seek dismissal for lack of power under § 1367(a), not under § 1367(c), which identifies factors considered and balanced in considering whether to decline supplemental jurisdiction over state claims. The two inquiries are distinct. *Palmer*, *Id.* at 22 F.3d at 1569. Once subsection (a) is satisfied, subsection (c) identifies the circumstances permitting declination: novel or complex state issues, substantial predominance, dismissal of all original-jurisdiction claims, or exceptional circumstances presenting other compelling reasons.
The motion does not seek dismissal of the federal claims. It identifies no novel state-law question or exceptional circumstance requiring a separate forum. The fact that Counts III and IV arise under state law is not itself a reason to decline jurisdiction. The overlap in ACPS personnel, communication practices, and documentary evidence favors coordinated adjudication, while the Court can manage distinct legal issues without treating them as jurisdictionally disqualifying.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Partial Motion to Dismiss (Doc. 10).

Respectfully submitted this 25 day of November, 2026.

MARCY I. LAHART, PLLC

s/ Marcy I LaHart
Marcy I. LaHart, Lead Counsel for Plaintiffs
Fla. Bar No. 0967009
WA Bar No. 62077
861 S. 40th Street
Tacoma, WA 98418
877-364-5290
Fax: (888) 400-1464
marcy@animallawattorney.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of November, 2026, a true and correct copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS has been furnished via CM/ECF electronic mail service to the Clerk of the Court who will send electronic notice to all counsel of record.

s/ Marcy I. LaHart
Marcy LaHart